Nos. 2017-2289, -2351

# United States Court of Appeals
# for the Federal Circuit

CISCO SYSTEMS, INC.,

*Appellant,*

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

ARISTA NETWORKS, INC.,

*Intervenor.*

---

ARISTA NETWORKS, INC.,

*Appellant,*

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

CISCO SYSTEMS, INC.,

*Intervenor.*

---

Appeal from the United States International Trade Commission,
Investigation No. 337-TA-945.

## APPELLANT ARISTA NETWORKS, INC.'S NONCONFIDENTIAL EMERGENCY MOTION TO STAY ENFORCEMENT OF LIMITED EXCLUSION ORDER AND CEASE AND DESIST ORDER

Douglas E. Lumish
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Gregory G. Garre
Bert C. Reiser
Gabriel K. Bell
Elana Nightingale Dawson
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2207

August 25, 2017

*Counsel for Appellant Arista Networks, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................ 1

BACKGROUND .............................................................................. 4

    A.    The Devices At Issue ..................................................... 4

    B.    Commission Investigation ................................................ 5

    C.    PTAB *Inter Partes* Review ........................................... 6

    D.    Subsequent Commission Proceedings ............................. 7

LEGAL STANDARD ........................................................................ 8

ARGUMENT ................................................................................... 9

    A.    The Commission's Orders Are Highly Unlikely To Withstand Appeal ..................................................................... 9

    B.    The Commission's Orders Are Causing, And Will Continue To Cause, Substantial, Irreparable Harm To Arista ................. 12

    C.    A Stay Will Not Substantially Or Irreparably Harm Cisco ........ 19

    D.    A Stay Will Support The Public Interest ........................... 21

CONCLUSION ............................................................................... 23

CERTIFICATE OF INTEREST .......................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbott Laboratories v. Sandoz, Inc.*,
   544 F.3d 1341 (Fed. Cir. 2008) ..............................................12, 19

*Bio-Technology General Corp. v. Genentech, Inc.*,
   80 F.3d 1553 (Fed. Cir. 1996) ...............................................12, 19

*Blonder-Tongue Laboratories, Inc. v. University of Illinois
   Foundation*,
   402 U.S. 313 (1971).................................................................22

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
   664 F.3d 922 (Fed. Cir. 2012) .........................................12, 18, 19

*Crowe & Dunlevy, P.C. v. Stidham*,
   640 F.3d 1140 (10th Cir. 2011) ...............................................12

*Cuozzo Speed Technologies, LLC v. Lee*,
   136 S. Ct. 2131 (2016)............................................................22

*Edelman v. Jordan*,
   414 U.S. 1301 (1973)..............................................................12

*Fresenius USA, Inc. v. Baxter International, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013) .................................................2, 9

*Houchins v. KQED, Inc.*,
   429 U.S. 1341 (1977)..............................................................19

*Hovey v. McDonald*,
   109 U.S. 150 (1883)................................................................12

*Husky Injection Molding Systems Ltd. v. Athena Automation Ltd.*,
   838 F.3d 1236 (Fed. Cir. 2016) .................................................6, 10

*MercExchange, L.L.C. v. eBay, Inc.*,
   500 F. Supp. 2d 556 (E.D. Va. 2007) .........................................20

**Page(s)**

*Polymer Technologies, Inc. v. Bridwell,*
103 F.3d 970 (Fed. Cir. 1996) .........................................................20

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH,*
237 F.3d 1359 (Fed. Cir. 2001) .......................................................12

*SmithKline Beecham Corp. v. Apotex Corp.,*
403 F.3d 1331 (Fed. Cir. 2005) .......................................................22

*Standard Havens Products, Inc. v. Gencor Industries, Inc.,*
897 F.2d 511 (Fed. Cir. 1990) ...........................................8, 9, 19, 20

*TMC Fuel Injection System, LLC v. Ford Motor Co.,*
No. 12-4971, 2016 WL 7155793 (E.D. Pa. Apr. 20, 2016), *aff'd,*
682 F. App'x 895 (Fed. Cir. 2017), *pet. for cert. filed,* No. 17-234
(Aug. 14, 2017) ...............................................................................22

*United States v. American Friends Service Committee,*
419 U.S. 7 (1974)............................................................................12

*Versata Development Group, Inc. v. SAP America, Inc.,*
793 F.3d 1306 (Fed. Cir. 2015) .......................................................11

## STATUTES AND REGULATIONS

19 U.S.C. § 1337(k)(1).........................................................................7

35 U.S.C. § 318(b) ...............................................................................9

37 C.F.R. § 42.80 .................................................................................9

## OTHER AUTHORITIES

Mark Chandler, *Protecting Innovation: Facing the Facts*, Cisco
Executive Platform Blog (Aug. 22, 2016),
https://blogs.cisco.com/news/protecting-innovation-facing-the-
facts .................................................................................................18

Federal Circuit Rule 18(d) ....................................................................8

Federal Rule of Appellate Procedure 18(a)(2)(A)(ii) .............................8

Pursuant to Federal Rule of Appellate Procedure 18(a) and Federal Circuit Rule 18, Appellant Arista Networks, Inc. ("Arista") hereby moves for a stay pending appeal of the limited exclusion order (Ex. 1) and the cease and desist order (Ex. 2) ("orders") issued by the International Trade Commission ("Commission") on May 4, 2017, which went into full effect on July 4, 2017. Arista also requests a temporary stay pending consideration as well as expedited consideration of this motion. The material marked confidential in this motion and in Exhibit 3 is confidential business and financial information. The Commission and Intervenor Cisco Systems, Inc. ("Cisco") do not consent to this motion and each intends to file a response.

## INTRODUCTION

On May 4, 2017, the Commission issued orders barring Arista from importing for sale its entire line of Ethernet switches into the United States based on its conclusion that the switches infringe the claims of two patents owned by Cisco. Less than one month later, however, the Patent Trial and Appeal Board ("PTAB") found Cisco's asserted patent claims unpatentable. The PTAB's decision should have led the Commission to stay enforcement of its orders, but, inexplicably, it has refused to do so, forcing Arista to turn to this Court for relief. Because neither Arista nor the public—including Arista's thousands of customers—should have to suffer the irreparable harm resulting from the

Commission's orders while this appeal is pending—when the PTAB has already found the underlying patents invalid—a stay pending appeal is clearly warranted.

Indeed, it is indisputable that, if the PTAB's decisions are upheld, the Commission's orders must be vacated by this Court, because, of course, there can be no infringement without a valid patent to infringe. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). And it is highly likely that the PTAB's orders will be upheld on appeal: they are thorough, well-reasoned, and premised largely on factual findings that are reviewed under the deferential "substantial evidence" standard. Although the PTAB's decisions are the subject of a separate appeal by Cisco, the fact that the PTAB has already held that the patents at issue in this case are invalid, and the fact that this Court is highly likely to affirm that conclusion, strongly supports granting a stay of the Commission's orders in this appeal.

A stay is also necessary to curtail the irreparable harm the Commission's orders are already inflicting on Arista and the public. As the numerous attached declarations attest, Arista's switches are the backbone of the data centers of many of the country's most important companies, including eBay, Hewlett Packard Enterprise, Bloomberg, Google, Microsoft, and Facebook, and the Commission's orders are already wreaking havoc for Arista's customers as well as Arista. *See* Sadana Declaration (Arista Networks, Inc.) ¶ 6, Aug. 25, 2017 ("Arista Decl.");

2

Rombakh Declaration (eBay, Inc.), Aug. 15, 2017 ("eBay Decl."); Wilde Declaration (Hewlett Packard Enterprise Company), Aug. 23, 2017 ("HPE Decl."); Boyes Declaration (Bloomberg LP), Aug. 15, 2017 ("Bloomberg Decl."); Ben-Oni Declaration (IDT Corporation), Aug. 18, 2017 ("IDT Decl."); Krejci Declaration (US Internet Corp.), Aug. 17, 2017 ("US Internet Decl."); Caputo Declaration (Seattle Internet Exchange), Aug. 14, 2017 ("SIX Decl."); Smith Declaration (AppNexus Inc.), Aug. 18, 2017 ("AppNexus Decl."); Hanke Declaration (Midwest Internet Cooperative Exchange), Aug. 17, 2017 ("MICE Decl."); Zugnoni Declaration (ContextLogic, Inc., doing business as Wish), Aug. 21, 2017 ("Wish Decl."); Dorney Declaration (Jane Street Group), Aug. 18, 2017 ("Jane Street Decl."); Pike Declaration (Amobee, Inc.), Aug. 23, 2017 ("Amobee Decl.") (Exs. 3-14, respectively). Millions of Americans, in turn, rely on the services of these blue chip companies multiple times a day.

Solely as a result of the Commission's orders, Arista must redesign its entire line of Ethernet switches, which requires a huge investment of time, money, and resources by Arista and its customers and is diverting the company's top engineering talent and other resources from critical business objectives. Arista Decl. ¶¶ 12-13. Arista's customers also must extensively test and qualify the redesigned products, change their own network architectures to incorporate the products, integrate this new equipment into their networks at significant cost, and,

in some cases, forgo key features in their networks. *Id.* ¶¶ 11, 14-16. Neither Arista nor its customers can be made whole for the lost time, diverted resources, significant disruptions, and inefficiencies required to comply with Commission orders that are likely to be vacated on appeal.

Conversely, the harm to Cisco (if any) of granting a stay would be minimal—and far from irreparable. Cisco has a parallel suit pending in district court where, if its patent claims are somehow revived, it can seek monetary relief based on Arista's alleged infringement. Accordingly, the balancing of the equities also weighs decisively in favor of granting a stay.

Arista's motion for a stay should be granted.

## BACKGROUND

### A. The Devices At Issue

Arista makes and sells Ethernet switches designed for data centers, and utilized by companies around the world. Arista Decl. ¶¶ 4-5. Switches connect devices within a network and allow them to communicate. *Id.* ¶ 6. Arista offers a wide variety of switch hardware models all of which run its EOS network operating system software. *Id.* ¶ 4. Arista's switches contain thousands of features, three of which led to the Commission's infringement findings: access

control lists ("ACLs") based in ternary content addressable memory ("TCAM"),[1] control plane policing ("CoPP"), and control plane ACLs ("CP-ACLs"). *See id.*

### B.    Commission Investigation

On January 27, 2015, the Commission instituted an investigation based on a complaint filed by Cisco alleging that Arista's products infringed six patents, including U.S. Patent Nos. 6,377,577 ("'577 patent") and 7,224,668 ("'668 patent"). Comm'n Op. 1, *Certain Network Devices, Related Software & Components Thereof (II)*, Inv. No. 337-TA-945 (May 4, 2017) ("945 Comm'n Op."), 2017 WL 3614521. On December 9, 2016, the Administrative Law Judge ("ALJ") issued a final initial determination, finding a violation of section 337 with respect to all but one of the asserted claims of the '577 patent and all of the asserted claims of the '668 patent.[2] *Id.* at 3. The ALJ held that the doctrine of assignor estoppel precluded Arista from challenging the '577 patent's validity but that, otherwise, the asserted claims of the '577 patent would be invalid. *Id.* at 3, 30-31.

On May 4, 2017, the Commission affirmed the ALJ's infringement findings without reviewing the assignor estoppel ruling. The same day, the Commission

---

[1]    TCAM is a component embedded by third-party vendors into the switching chips they sell to Arista.

[2]    The ALJ found claim 2 of the '577 patent not infringed. *Id.* at 3.

issued a limited exclusion order and a cease and desist order prohibiting Arista from importing for sale the products found to infringe.  Exs. 1, 2.

### C.    PTAB *Inter Partes* Review

While the Commission's investigation was underway, Arista sought *inter partes* review ("IPR") of the '577 and '668 patents, which the PTAB instituted on June 11, 2016.[3]  Resp.'s Notice of Suppl. Authority 1-2 (June 28, 2016).  On May 25, 2017, the PTAB found each asserted claim of the '577 patent other than claim 2—that is, every claim Arista was found by the Commission to infringe—invalid.  Paper 53 at 2, IPR2016-00303 (May 25, 2017) ("IPR '577") (Ex. 15).  On June 1, 2017, the PTAB likewise found invalid all asserted claims of the '668 patent.  Paper 52 at 2, IPR2016-00309 (June 1, 2017) ("IPR '668") (Ex. 16).  Following well-established precedent, the PTAB rejected Cisco's argument that assignor estoppel barred the PTAB from instituting review because assignor estoppel is inapplicable to IPRs.  IPR '577 at 7-8.  The PTAB's assignor estoppel rulings, this Court has concluded, are not reviewable.  *See Husky Injection Molding Sys. Ltd. v. Athena Automation Ltd.*, 838 F.3d 1236, 1247 (Fed. Cir. 2016).

---

[3]    Although Arista first filed its IPR petitions on April 1, 2015 ('668 patent) and April 10, 2015 ('577 patent), the PTAB instituted review based on Arista's petitions filed on December 9, 2015, which Arista filed after prior determinations by the PTAB not to institute IPR.

### D.    Subsequent Commission Proceedings

In the wake of the PTAB's decisions, Arista immediately petitioned the Commission to suspend or rescind its orders, explaining that, because of the PTAB's decisions, "the conditions which led to such exclusion from entry or order no longer exist."   19 U.S.C. § 1337(k)(1).   Arista also noted that the equities strongly favored suspending or rescinding the orders, given the significant harm it faced in contrast to the minimal (if any) harm Cisco would suffer if the orders were suspended.   The Commission's Office of Unfair Import Investigations ("OUII") agreed that "Commission precedent and consideration of the equities support[ed] suspension of the remedial orders pending appeal" of the PTAB's decisions.   OUII Br. 1 (June 12, 2017, public version filed June 22, 2017).   The Commission nevertheless denied the petitions because the patent claims had not yet been cancelled, stating that "the conditions which led to . . . exclusion" still existed. Comm'n Op. 14 (July 25, 2017, public version filed Aug. 16, 2017), ECF No. 27-2.

Pursuant to Federal Rule of Appellate Procedure 18(a)(1), on July 21, 2017, Arista asked the Commission to stay its orders pending appeal.[4]   Cisco responded, but did not seriously contest that Arista's harms are irreparable.   Nor did Cisco offer any evidence to show that a stay would harm Cisco, irreparably or otherwise.

---

[4]    Arista's motion was docketed on July 24, 2017.

Arista's motion remains pending.   Given the significant harm Arista and its customers are incurring daily, and the Commission's stated intention to oppose this motion, it is not practicable for Arista to continue waiting for the Commission to rule, especially after having waited a month for a ruling on its stay request already. *See* Fed. R. App. P. 18(a)(2)(A)(ii); Fed. Cir. R. 18(d).

## LEGAL STANDARD

This Court looks to four factors in determining whether to grant a stay: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) (citation omitted).   Where "the balance of hardships tips decidedly toward [the movant], it will ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *Id.* (citation omitted).   Likewise, "[w]hen harm to applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.'" *Id.* (citation omitted).   Accordingly, this Court has granted stays where, as here, there is serious reason to doubt a patent's validity and the movant and third parties are suffering significant, irremediable harm. *See, e.g.*,

8

*Butamax(TM) Advanced Biofuels LLC v. Gevo, Inc.*, No. 12-1490 (Aug. 10, 2012), ECF No. 47; *ePlus v. Lawson Software, Inc.*, No. 13-1506 (Sept. 19, 2013), ECF No. 29.

All of these factors point definitively toward a stay in this case.

## ARGUMENT

### A.    The Commission's Orders Are Highly Unlikely To Withstand Appeal

Arista is highly likely to succeed on appeal, because it is highly likely that the Commission's orders will be vacated. *See Standard Havens*, 897 F.2d at 514 ("An order vacating the judgment would be success on the merits of the appeal."). As discussed, the PTAB has already determined that the patents underlying the Commission's decision are invalid. If the PTAB's decisions are affirmed, the relevant claims of the '577 and '668 patents must be cancelled, *see* 35 U.S.C. § 318(b); 37 C.F.R. § 42.80, and the cancellation of those claims will moot any litigation based on those claims, including this action. *Fresenius*, 721 F.3d at 1340.

It is likely this Court will uphold the PTAB's decisions, and will do so before the present appeal is completed. *See* Fed. Circuit Appeal Nos. 17-2347, 17-2384. The PTAB's thorough and well-reasoned decisions explain why the relevant claims of both the '577 and '668 patents are invalid. Cisco's leading argument thus far has been that the PTAB erred in not applying assignor estoppel to preclude

Arista from challenging the '577 patent's validity. *See*, *e.g.*, ITC Cisco Resp. to Mot. to Stay 15-19 (Aug. 3, 2017, public version filed Aug. 14, 2017) ("Cisco Resp.").

Under *Husky*, this Court "lack[s] jurisdiction to review the Board's determination on whether assignor estoppel precludes it from instituting *inter partes* review." 838 F.3d at 1247. Cisco nevertheless argues that this Court's *Husky* opinion says that the PTAB's assignor estoppel rulings are unreviewable only when they are part of an *institution* decision rather than a *merits* decision. That argument fails.

*Husky* makes clear that assignor estoppel is relevant only to institution, not to the ultimate merits of an unpatentability determination. *Id.* at 1246-47. Moreover, Cisco itself couched its assignor estoppel argument as a challenge to the PTAB's institution decision. Even after the PTAB instituted review, Cisco simply repeated its already-rejected argument that "the Board should have applied the doctrine of assignor estoppel to deny the *institution*." Patent Owner Response 58 (Sept. 29, 2016) (emphasis added). The PTAB addressed and rejected Cisco's argument as presented. *See* IPR '577 at 7 ("Patent Owner urges that the Board should have denied institution under an application of assignor estoppel . . . ."). This Court lacks jurisdiction to review that decision. *Husky*, 838 F.3d at 1247.

Cisco also relies on *Versata Development Group, Inc. v. SAP America, Inc.*, 793 F.3d 1306 (Fed. Cir. 2015). Cisco Resp. 19. But *Versata* supports Arista's position, not Cisco's. In *Versata*, the Court explained that unreviewable PTAB decisions, such as the decision whether to institute, remain unreviewable regardless of "when the PTAB considered [the] issue." 793 F.3d at 1319. Therefore, Cisco's decision to rehash its assignor estoppel argument against institution in its post-institution briefing, and the PTAB's willingness to address that argument (again) in its final written decision, does not convert its non-reviewable decision on assignor estoppel into a reviewable one. *See id.* ("neither is the timing determinative"). It is telling that Cisco pins its hopes on this Court departing from its established precedent in *Husky* and *Versata*.

Cisco also half-heartedly challenges the merits of the PTAB's determinations that claims of the '577 and '668 patent are invalid (Cisco Resp. 19-23), but those arguments are equally unavailing. The PTAB correctly found the claims invalid over prior art that teaches every limitation in the claims that the Commission found infringed. *See, e.g.*, IPR '577 at 6, 22-31, 34-37; IPR '668 at 19-25, 43-48. The PTAB carefully considered and rejected each of Cisco's contentions on validity based on well-supported factual findings and detailed analysis of the prior art. IPR '577 at 22-36. It is, at the least, likely that those

decisions will be affirmed on appeal—and affirmance of those decisions *necessarily* will result in the vacatur of the Commission's orders.

The likelihood that the Commission's orders will be vacated alone counsels strongly in favor of staying the Commission's orders.

## B.    The Commission's Orders Are Causing, And Will Continue To Cause, Substantial, Irreparable Harm To Arista

Arista also clearly faces irreparable harm.  An "irreparable" harm, of course, is simply a harm that cannot be remedied.  *See United States v. American Friends Serv. Comm.*, 419 U.S. 7, 11 (1974).  It can take a variety of forms, including "loss of goodwill, damage to reputation, and loss of business opportunities."  *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012); *see also Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361-62 (Fed. Cir. 2008).  Loss of market position, revenue, and research and development support also qualify, *see Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1566 (Fed. Cir. 1996); *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001), as do unrecoverable financial losses, *see, e.g.*, *Edelman v. Jordan,* 414 U.S. 1301, 1302-03 (1973) (Rehnquist, C.J., in chambers); *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1158 (10th Cir. 2011).

Arista is being subjected to all of these harms, each of which standing alone would justify a stay.  *See Hovey v. McDonald*, 109 U.S. 150, 161 (1883).  These harms flow from two basic sources.  First, in response to the Commission's orders,

**CONFIDENTIAL MATERIAL OMITTED**

Arista is redesigning its entire product line,[5] removing the industry-standard features for network security found to infringe and, where possible, replacing them with new features.  Arista Decl. ¶¶ 10-11.  This effort has already required the efforts of ███████ of engineers for many months and ███████ of ███████—and will consume even more if the orders remain in effect.  *Id.* ¶¶ 12-13.  In line with its steadfast commitment to respect the Commission's orders, and given the complexity of the technology involved, Arista has devoted its most senior and experienced engineering talent to this effort.  *Id.* ¶ 13.  The rededication of that talent for one purpose (redesigning Arista's products so they comply with the Commission's orders) means that this talent is lost for other purposes, like designing new and better products.  *Id.* ¶ 18.

And the redesign effort required by the Commission's orders is just the beginning.  Arista's redesigns replace well-understood, industry-standard features with new features (or nothing at all).  *Id.* ¶¶ 10-11.  Arista's customer service and sales teams thus must spend significant time helping Arista's customers understand the redesigned products.  *Id.* ¶ 17.  Also, once complete, the redesigns will require substantial ongoing work to handle unexpected problems and enhance performance.  *Id.* ¶ 18.  Arista's engineering teams will thus have to spend

---

[5]   Arista's entire business is focused on making next-generation Ethernet switches for modern cloud networking.

additional time helping customers test the redesigned products, rewrite their switch configurations, and rework their networks to accommodate the redesigned features. *Id.* ¶ 14.

Losing engineering time is extremely harmful because so much of Arista's business relies on its engineering teams. Like many other technology companies, Arista's success depends on keeping up with the rapid growth of networking through continuous innovation by Arista engineers. In addition, after Arista sells its switches, Arista's engineers work directly with many of Arista's larger customers—often for years—to build new features to support each customer's evolving business needs. *Id.* ¶ 7. Every hour Arista engineers spend on redesigns and related efforts is an hour Arista engineers cannot devote to these business-critical activities, which directly threatens Arista's ability to compete and its position in the marketplace. *Id.* ¶ 18. The loss of time from Arista's service and sales teams is equally detrimental, causing Arista to ███ additional ██████ ██████████ and ██████—losses for which Arista cannot recover. *Id.* ¶ 19.

Second, the Commission's orders are also gravely harming Arista's customers, which in turn is exacerbating the harm to Arista. Before customers can implement Arista's redesigned products, they must qualify, test, and deploy the redesigned switches and software in their networks. *See, e.g.*, HPE Decl. ¶¶ 5-9; eBay Decl. ¶ 7; Bloomberg Decl. ¶ 7. This is an expensive and time-consuming

process that can last three to six months.  Bloomberg Decl. ¶ 7; eBay Decl. ¶ 7; US Internet Decl. ¶ 6.  Moreover, customers who want or need to continue using Arista products are being forced to replace key industry-standard security features, which are well-understood, with unfamiliar alternatives.  IDT Decl. ¶¶ 5, 7; AppNexus Decl. ¶ 8; Amobee Decl. ¶¶ 5-6; Jane Street Decl. ¶¶ 3-4.  This includes the substantial burden of rewriting switch configurations to address these features and, for those customers with extensive network automation and configuration tools, reworking those tools to cope with unfamiliar new features.  Arista Decl. ¶¶ 14-16. This is a massive undertaking.

Further complicating matters is the fact that, because the accused features are largely implemented on switching chips provided by third parties, Arista's ability to change or replace these features is limited.[6]  *Id.* ¶ 8.  And where Arista has been able to implement new features, the features have different limitations than the industry-standard features they replace.  *Id.* ¶ 11.  As a result, many of Arista's customers will have to rearchitect their networks to accommodate these changes and ensure adequate security.  HPE Decl. ¶ 5; Bloomberg Decl. ¶ 6; IDT Decl. ¶ 6; Jane Street Decl. ¶ 4.

---

[6]  With respect to the '577 patent, on some switch hardware, Arista was unable to replace the accused TCAM ACL feature with an alternative and so has simply removed the feature from that hardware.

For some Arista customers, the redesigns will not work at all because the "lack of availability of [the accused technology]" would result in the provision of "inadequate security and stability to [their] membership and their multitude of users and customers." SIX Decl. ¶ 5; *see* US Internet Decl. ¶ 6; IDT Decl. ¶ 8. Such customers will have to purchase switches from other sources and go through the extensive effort of qualifying and implementing those switches. SIX Decl. ¶ 5; eBay Decl. ¶¶ 8-9; AppNexus Decl. ¶ 8. In many cases, customers will select switches from another vendor (not necessarily Cisco) that provide the same features implemented on the same third-party switching chips that Arista has been forced to remove. AppNexus Decl. ¶ 8; Arista Decl. ¶ 21; SIX Decl. ¶ 4; Wish Decl. ¶ 7.

The gravity of the harm to Arista's customers—and thus to Arista—cannot be overstated. In all of these cases, Arista's customers must divert their limited IT resources to the management of "the problems that Arista's compliance with the remedial order are causing." Bloomberg Decl. ¶¶ 5, 8; *see* HPE Decl. ¶¶ 7, 9. For example, eBay is having "to divert [its] limited resources away from important projects," eBay Decl. ¶ 9; Bloomberg is having to "divert [its] research and development resources away from projects that would provide added value to [its] customers," Bloomberg Decl. ¶ 7; and AppNexus is having to divert its "limited resources away from necessary planned activities which will directly impact

16

**CONFIDENTIAL MATERIAL OMITTED**

AppNexus monetarily as well as consume precious time and manpower," AppNexus Decl. ¶ 7. And regardless of whether Arista's customers can use its redesigned switches or will have to go elsewhere, the customers' efforts in response to Arista's compliance with the orders "will be costly." Bloomberg Decl. ¶ 8; *see* SIX Decl. ¶ 5; US Internet Decl. ¶ 6. It is clear from the foregoing that Arista's compliance with the Commission's orders "has and continues to damage" its customers "significantly." eBay Decl. ¶ 5; *see* US Internet Decl. ¶¶ 5-7; Bloomberg Decl. ¶¶ 5-8; IDT Decl. ¶¶ 5-9; SIX Decl. ¶¶ 4-5; AppNexus Decl. ¶¶ 5-8; MICE Decl. ¶¶ 6-7; Wish Decl. ¶¶ 5-8.

Not surprisingly, the harm to Arista's customers is ████████ the ████████ Arista spent many years building with its customer base. Moreover, for those Arista customers who cannot or do not want to use its redesigned products, Arista is ████ potential ████████, ████████, and, ultimately, ████████████. *See, e.g.*, Arista Decl. ¶ 21; SIX Decl. ¶ 5; AppNexus Decl. ¶ 8; US Internet Decl. ¶¶ 6, 7. Arista is already ████████████ to provide switches for networks due to the challenges caused by Arista's compliance with the Commission's orders. Arista Decl. ¶ 19.

The harm caused by the Commission's orders is exacerbated by the unique nature of the market for network switches. When companies set up data centers, they pick switches at the outset with the expectation that they will last three to five

**CONFIDENTIAL MATERIAL OMITTED**

years, and sometimes longer. Arista Decl. ¶¶ 7, 20; AppNexus Decl. ¶ 7; SIX Decl. ¶ 5 ("The network switches we buy are intended to last up to a decade."). For customers that are unable to use Arista's redesigned switches, as well as those customers that find the redesigns unsatisfactory, Arista could ███ up to five years' worth of ███. Arista Decl. ¶¶ 7, 20; *see Celsis In Vitro*, 664 F.3d at 930 ("The record also included testimony that this market was particularly sensitive because customers buy in bulk and at irregular times, such that the loss of a single sale in this market may be more harmful than for products purchased daily.").

Cisco, for its part, is making sure that Arista's reputation is harmed as much as possible. Even though the PTAB has said the patents at issue are invalid, Cisco has repeatedly (and falsely) accused Arista of "blatantly copying" and repeatedly quotes the same sentence from a *separate* proceeding that is still under review. *See, e.g.*, Cisco Resp. 1 (referring to Arista's "corporate culture of copying" (quoting Comm'n Op., Inv. No. 337-TA-944)). Cisco has continued its misguided assault on Arista in its General Counsel's blog, warning of the "risk" to "Arista's customers and partners," "Arista's suppliers," "Arista's investors," and "Arista's board and company officers." Mark Chandler, *Protecting Innovation: Facing the Facts*, Cisco Executive Platform Blog (Aug. 22, 2016), https://blogs.cisco.com/news/protecting-innovation-facing-the-facts. Cisco's

unrelenting, baseless attacks on Arista are themselves causing irreparable harm to Arista's reputation. *See Celsis In Vitro*, 664 F.3d at 930.

Arista has *no* means to recover for any of these harms, making them indisputably irreparable and, given the volume of customer declarations, undeniably significant. *See id.*; *Abbott Labs.*, 544 F.3d at 1361-62; *Bio-Technology*, 80 F.3d at 1566. Especially given the likelihood that the Commission's orders will not withstand appeal, there is no justification for forcing Arista and its customers to undergo the burdensome, inefficient, and risky task of introducing redesigned products into the marketplace based on patents that will almost certainly be cancelled. *See Houchins v. KQED, Inc.*, 429 U.S. 1341, 1346 (1977) (Rehnquist, J., in chambers) ("[P]reservation of th[e] status quo is an important factor favoring a stay," and "is preferable to forcing the [appellant] to develop new procedures which might be required only for a short period of time.").

### C.    A Stay Will Not Substantially Or Irreparably Harm Cisco

In stark contrast, a stay will not cause Cisco any substantial—let alone irreparable—harm. In fact, the *only* harm Cisco can conceivably claim from a stay—and the only harm it has claimed—is the alleged ongoing infringement of its intellectual property. But if that harm were sufficient to justify denial of a stay, "no stay pending appeal could ever issue in an infringement case." *Standard Havens*, 897 F.2d at 515. Yet, as this Court has recognized, "such stays must be

available" under the federal rules. *Id.* Moreover, Cisco can recover for any potential harm it might incur from a stay by obtaining a money damages award in its currently pending district court suit. *See Cisco Sys., Inc. v. Arista Networks, Inc.*, No. 4:14-cv-05343-JSW (N.D. Cal. filed Dec. 5, 2014) (stayed).

The fact that it waited until 2014 before asserting these patents against Arista—despite Arista's open use of the accused technology for years—underscores the *absence* of irreparable harm on Cisco's part. Arista Decl. ¶ 8; *see Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996) ("undu[e] delay[] in bringing suit . . . negat[ed] the idea of irreparability"); *see also MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 573 n.13 (E.D. Va. 2007) (two-year delay "substantial evidence" of no irreparable harm). Further, Cisco's failure to assert these same patents against the third-party chip companies that supply much of the accused technology to the entire industry or the numerous other vendors that implement the same features puts the lie to Cisco's claim that it is harmed by the use of its alleged "intellectual property." *See* Arista Decl. ¶ 8; *see also* AppNexus Decl. ¶ 8; SIX Decl. ¶ 4.

If this Court grants a stay, Cisco will not face substantial let alone irreparable harm.

### D.    A Stay Will Support The Public Interest

The public at large will undoubtedly suffer absent a stay given the role Arista's switches play in the data centers of some of the largest companies in the world—companies that millions of people rely on daily. *See* Arista Decl. ¶ 6; eBay Decl. ¶ 3; Bloomberg Decl. ¶ 3; IDT Decl. ¶ 3; AppNexus Decl. ¶ 3; MICE Decl. ¶ 3; SIX Decl. ¶ 3; US Internet Decl. ¶ 3; Wish Decl. ¶ 3.

Arista's compliance with the Commission's orders and its related redesign efforts are saddling Arista's customers with significant burdens, posing potential risks to their networks, and requiring downtime of their networks to allow for incorporation of redesigned products. *See supra* 14-17; Arista Decl. ¶¶ 14-16. Moreover, Arista's customers are already forgoing efforts to enhance the public's experience with their products in order to respond to the present situation. *See, e.g.*, Bloomberg Decl. ¶¶ 5, 7.

The situation will only get worse should a stay not issue. For example, because of the required changes, some Arista customers are facing security concerns that could in turn affect their consumers. *E.g.,* Bloomberg Decl. ¶ 6; Wish Decl. ¶ 5. The very process of determining how to respond to these security issues—and the many other issues presented by implementing new networking products—is itself a burdensome undertaking that many companies can still avoid.

*E.g.*, IDT Decl. ¶ 10; eBay Decl. ¶ 9.  The harms to Arista's customers and its customers' customers—that is, the public at large—further support a stay.

Indeed, the patent system itself—which, of course, is designed to serve the public interest—depends on the enforcement of only legitimate, valid patents.  As the Supreme Court has explained:

> A patent by its very nature is affected with a public interest. . . .   [It] is an exception to the general rule against monopolies and to the right to access to a free and open market.   The far-reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies . . . are *kept within their legitimate scope*.

*Blonder-Tongue Labs., Inc. v. University of Ill. Found*., 402 U.S. 313, 343 (1971) (emphasis and final alteration added) (citation omitted).  Allowing the orders to remain in effect despite the PTAB's invalidity findings would run counter to the "significant public policy interest in removing invalid patents from the public arena."  *SmithKline Beecham Corp. v. Apotex Corp*., 403 F.3d 1331, 1354 (Fed. Cir. 2005).

The IPR process likewise exists to "protect the public's 'paramount interest in seeing that patent monopolies . . . are kept within their legitimate scope.'"  *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144 (2016) (alteration in original) (citation omitted).  Recognizing this, district courts "generally give deference to PTAB *inter partes* review decisions based on the PTAB's specialized

patent knowledge and expertise." *TMC Fuel Injection Sys., LLC v. Ford Motor Co.*, No. 12-4971, 2016 WL 7155793, at *3 (E.D. Pa. Apr. 20, 2016), *aff'd*, 682 F. App'x 895 (Fed. Cir. 2017), *pet. for cert. filed*, No. 17-234 (Aug. 14, 2017). Here, the fact that the PTAB has already determined that the patents at issue are *not* legitimate further underscores that the public interest weighs heavily toward granting a stay.

## CONCLUSION

For the foregoing reasons, Arista respectfully requests that the Court grant this motion and stay the Commission's orders pending appeal. Arista also requests that the Court grant a temporary stay pending consideration of this motion and that this motion be considered on an expedited basis.

August 25, 2017                         Respectfully submitted,

                                        /s/ *Gregory G. Garre*

Douglas E. Lumish                        Gregory G. Garre
LATHAM & WATKINS LLP                     Bert C. Reiser
140 Scott Drive                          Gabriel K. Bell
Menlo Park, CA 94025                     Elana Nightingale Dawson
(650) 328-4600                           LATHAM & WATKINS LLP
                                         555 Eleventh Street, NW
                                         Suite 1000
                                         Washington, DC 20004
                                         (202) 637-2207

*Counsel for Appellant Arista Networks, Inc.*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Nos. 2017-2289, 2351

ARISTA NETWORKS, INC.
v.
INTERNATIONAL TRADE COMMISSION

ARISTA NETWORKS, INC.

## CERTIFICATE OF INTEREST

Counsel for the Intervenor (No. 17-2289) and Appellant (No. 17-2351) certifies the following:

1.  Full Name of Party represented by me:

    Arista Networks, Inc.

2.  Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is:

    Arista Networks, Inc.

3.  Parent corporations and publicly held companies that own 10 percent or more of stock in the party:

    None

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

    **Latham & Watkins LLP:** Matthew D. Aichele, Dale Chang, Michael A. David, Adam M. Greenfield, Gabriel S. Gross, Julie M. Holloway, Jeffrey G. Homrig, Brian W. Lewis, Ethan Y. Park, Richard L. Pell, Brett M. Sandford, Amy L. Thomas, Thomas W. Yeh, Patricia Young, Nathanial J. McPherson

24

**Fish & Richardson P.C.**: Frank J. Albert, Michael J. Ballanco, Brian Boyd, Juanita R. Brooks, Ruffin B. Cordell, Robert Courtney, Lauren A. Degnan, John A. Dragseth, Christopher W. Dryer, Thomas S. Fusco, Aleksander Gelberg, David Goren, Kevin Greene (former), Jared M. Hartzman, David J. Healey, Leeron G. Kalay, Steven Katz, Andrew R. Kopsidas, Zachary A. Loney, Xin Ma, Michael J. McKeon, Ralph A. Phillips, Elizabeth G. H. Ranks, Jennifer M. Rea (former), Thomas H. Regar II, Adam R. Shartzer, Christopher G. Smith (former), Seth M. Sproul, Richard A. Sterba, Kevin Su, Michael C. Tyler (former), Ronald Vogel, Markus D. Weyde, Linhong Zhang

**Keker, Van Nest, & Peters LLP:** Brian L. Ferrall, Michael S. Kwun, Elizabeth K. McCloskey, David J. Silbert, Robert A. Van Nest

**Mayer Brown LLP**: Timothy Keeler, Warren Payne, Howard Waltzman

**Tensegrity Law Group LLP**: Paul T. Ehrlich, Robert L. Gerrity, William P. Nelson, Matthew D. Powers, Stefani C. Smith, Jonathan G. Tamimi

**Wilson Sonsini**:  Veronica S. Ascarrunz, David H. Reichenberg


Dated:  August 25, 2017                    Respectfully submitted,


                                           */s/ Gregory G. Garre*
                                           Gregory G. Garre
                                           LATHAM & WATKINS LLP
                                           555 11th Street, NW
                                           Suite 1000
                                           Washington, DC 20004
                                           (202) 637-2207

                                           *Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2017, I electronically filed confidential and nonconfidential versions of the foregoing Appellant Arista Networks, Inc.'s Emergency Motion to Stay Enforcement of Limited Exclusion Order and Cease and Desist Order with the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system.  All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

I further certify that on this same day copies of the confidential version of the foregoing Appellant Arista Networks, Inc.'s Emergency Motion to Stay Enforcement of Limited Exclusion Order and Cease and Desist Order was served on counsel for all parties via FedEx as listed below.

Megan M. Valentine
U.S. International Trade Commission
500 E Street, SW
Washington, DC  20436

John C. O'Quinn
Kirkland & Ellis LLP
655 15th Street, NW
Washington, DC  20005

*/s/ Gregory G. Garre*
Gregory G. Garre

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing motion complies with the type-volume limitations in Federal Rule of Appellate Procedure 27(d)(2)(A). According to the word count feature of Microsoft Word, the motion contains 5,188 words, excluding the exempted parts under Rule 32. The motion has been prepared in a proportionally spaced typeface using Times New Roman in 14 point size.

Respectfully submitted,

 s/ *Gregory G. Garre*
Gregory G. Garre

## CERTIFICATE OF COMPLIANCE WITH RULE 27(m)

I hereby certify that the foregoing motion and attached Exhibit 3 comply with the limitations set forth in Federal Circuit R. 27(m) and contains 14 words (including numbers) marked as confidential.

Respectfully submitted,

 s/ *Gregory G. Garre*

Gregory G. Garre
*Counsel for Appellant Arista Networks, Inc.*

August 25, 2017

# EXHIBITS

# TABLE OF CONTENTS
# EXHIBITS

**Exhibit**    **Description**

1    Limited Exclusion Order, issued May 4, 2017

2    Cease and Desist Order, issued May 4, 2017

3    Declaration of Anshul Sadana (Arista Networks, Inc.), dated Aug. 25, 2017

4    Declaration of Yevgeniy Rombakh (eBay, Inc.), dated Aug. 15, 2017

5    Declaration of Dominic Wilde (Hewlett Packard Enterprise Company), dated Aug. 23, 2017

6    Declaration of Truman Boyes (Bloomberg LP), dated Aug. 15, 2017

7    Declaration of Golan Ben-Oni (IDT Corporation), dated Aug. 18, 2017

8    Declaration of Justin M. Krejci (US Internet Corp.), dated Aug. 17, 2017

9    Declaration of Christopher P. Caputo (Seattle Internet Exchange), dated Aug. 14, 2017

10    Declaration of Timothy G. Smith (AppNexus Inc.), dated Aug. 18, 2017

11    Declaration of Jason M. Hanke (Midwest Internet Cooperative Exchange), dated Aug. 17, 2017

12    Declaration of Paul Zugnoni (ContextLogic, Inc., doing business as Wish), dated Aug. 21, 2017

13    Declaration of Jon-Paul Dorney (Jane Street Group), dated Aug. 18, 2017

14    Declaration of Daniel Pike (Amobee, Inc.), dated Aug. 23, 2017

15    Paper 53, IPR2016-00303 (IPR '577), entered May 25, 2017

| Exhibit | Description |
|---------|-------------|
| 16 | Paper 52, IPR2016-00309 (IPR '668), entered June 1, 2017 |