Nos. 2017-2289, -2351

# United States Court of Appeals for the Federal Circuit

CISCO SYSTEMS, INC.,

*Appellant,*

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION,

*Appellee,*

ARISTA NETWORKS, INC.,

*Intervenor.*

ARISTA NETWORKS, INC.,

*Appellant,*

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION,

*Appellee.*

CISCO SYSTEMS, INC.,

*Intervenor.*

Appeals from the U.S. International Trade Commission, Inv. No. 337-TA-945

## CISCO SYSTEMS, INC.'S NON-CONFIDENTIAL OPPOSITION TO ARISTA NETWORKS, INC.'S EMERGENCY MOTION TO STAY

Deanna Tanner Okun
Paul Bartkowski
ADDUCI, MASTRIANI &
SCHAUMBERG, LLP
1133 Conn. Ave., N.W.
Washington, DC  20036
(202) 407-8642

Adam R. Alper
Michael W. De Vries
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
(415) 439-1400

John C. O'Quinn
Jason M. Wilcox
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, DC  20005
(202) 879-5000

*Counsel for Cisco Systems, Inc.*

September 8, 2017

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................4

    A.    Commission Investigation.................................................5

    B.    PTAB *Inter Partes* Review Proceedings...............................6

    C.    Arista's Attempts To Delay Enforcement Of
          The Commission's Remedial Orders ...................................6

ARGUMENT ....................................................................................8

I.    Arista Is Unlikely To Succeed In This Appeal.............................8

    A.    Arista Cannot Show It Is Likely To Succeed On The Merits Of
          *This* Appeal......................................................................8

    B.    The PTAB's Decisions Are Legally Irrelevant
          And Deeply Flawed............................................................12

II.    The Balance Of Harms Favors Leaving The Remedial Orders In Place ......14

    A.    A Stay Will Substantially Harm Cisco.................................14

    B.    Enforcing The Remedial Orders Will Cause Arista
          No Irreparable Harm .........................................................16

III.    The Public Interest Supports Denying A Stay.............................21

CONCLUSION ..................................................................................23

---

### Confidential Information Omitted

Confidential information, which was designated confidential in the ITC, has been omitted from pages 15 and 16. The omitted information generally relates to Arista's alleged harms from a stay pending appeal.

---

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abbott Labs. v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008) ........................................................................14

*Accumed LLC v. Stryker Corp.*,
  551 F.3d 1323 (Fed. Cir. 2008) ................................................................19, 20

*Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell*,
  129 F.3d 1 (1st Cir. 1997)..................................................................................17

*Apple Inc. v. Samsung Elecs. Co.*,
  809 F.3d 633 (Fed. Cir. 2015) .........................................................................21

*Baker v. Adams County/Ohio Valley School Bd.*,
  310 F.3d 927 (6th Cir. 2002) ...........................................................................19

*Blonder-Tongue Labs. v. Univ. of Ill. Foundation*,
  402 U.S. 313 (1971)............................................................................................9

*Butamax(TM) Advanced Biofuels LLC v. Gevo, Inc.*
  No. 12-1490, ECF No. 47 (Aug. 10, 2012) ......................................................11

*Celsis In Vitro v. CellzDirect*,
  664 F.3d 922 (Fed. Cir. 2012) .........................................................................15

*Certain High-Brightness Light Emitting Diodes*,
  Inv. No. 337-TA-556, Comm'n Op., 2008 WL 2556199
  (June 1, 2008)....................................................................................................21

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2017) .......................................................................13

*ePlus v. Lawson Software, Inc.*
  No. 13-1506, ECF No. 29 (Sept. 19, 2013) ......................................................11

*Farrel Corp. v. ITC*,
  949 F.2d 1147 (Fed. Cir. 1991) .......................................................................15

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
721 F.3d 1330 (Fed. Cir. 2013) ....................................................................9, 22

*FTC v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980)........................................................................................18

*Hill v. McDonough*,
547 U.S. 573 (2006)..........................................................................................8

*Husky Injection Molding Sys. Ltd. v. Athena Automation Ltd.*,
838 F.3d 1236 (Fed. Cir. 2016) ..................................................................12, 13

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ........................................................................19

*Icon Health and Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) ......................................................................14

*Impression Prods., Inc. v. Lexmark Int'l, Inc.*,
137 S. Ct. 1523 (2017)....................................................................................12

*Lawson Prods., Inc. v. Avnet, Inc.*,
782 F.2d 1429 (7th Cir. 1986) ........................................................................22

*Merial Ltd. v. Cipla Ltd.*,
426 F. App'x 915 (Fed. Cir. 2011) ....................................................................8

*Nken v. Holder*,
556 U.S. 418 (2009)..............................................................................8, 17, 22

*Oil States Energy Services v. Greene's Energy Group.*,
No. 16-712 (certiorari granted June 12, 2017) .........................................4, 11, 23

*Personal Web Techs., LLC v. Apple, Inc.*,
848 F.3d 987 (Fed. Cir. 2017) ....................................................................13, 14

*Rios v. Nicholson*,
490 F.3d 928 (Fed. Cir. 2007) ........................................................................12

*Ruckelshaus v. Monsanto Co.*,
463 U.S. 1315 (1983) (Blackmun, J., in chambers) ......................................8, 22

*Sampson v. Murray*,
415 U.S. 61 (1974)....................................................................................18, 19

*SAP AG v. Versata Computer Indus. Solutions*,
   No. 14A49 (U.S. July 24, 2014) ...........................................................................11

*Spansion v. ITC*,
   2009 WL 2876448 (Sept. 8, 2009) ............................................................10, 15

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
   897 F.2d 511 (Fed. Cir. 1990) ...........................................................................11

*Suprema v. ITC*,
   796 F.3d 1338 (Fed. Cir. 2015) (*en banc*) ...................................................15, 23

*TPV Tech v. ITC*,
   No. 2009-1386, ECF No. 41 (July 29, 2009) ....................................................10

*Versata Dev. Grp., Inc. v. SAP America, Inc.*,
   793 F.3d 1306 (Fed. Cir. 2015) .........................................................................13

## Statutes & Regulations

19 U.S.C. §1337(j) .................................................................................................6

35 U.S.C. §314(d) ...............................................................................................13

35 U.S.C. §318(b) ............................................................................................9, 22

70 Fed. Reg. 43,251 (July 21, 2005).....................................................................6

80 Fed. Reg. 4313 (Jan. 27, 2015) ........................................................................5

# INTRODUCTION

Arista's request is truly extraordinary:  Arista seeks a stay of the ITC's remedial orders, not based on likelihood of success in *this* appeal, but on the purported likelihood of success in other appeals that *might* ultimately have collateral consequences here.  Arista's argument boils down to saying that, as a *policy matter*, a patent should immediately become unenforceable *whenever* the PTAB enters a final written decision of unpatentability, notwithstanding the patent owner's right to this Court's review of that decision and that another agency empowered by Congress to review patent invalidity challenges has found otherwise.  That is not the law Congress adopted—quite the opposite.  As this Court has made clear, claims remain valid and enforceable until a patent owner either forgoes or exhausts all appellate remedies.

The ITC did not abuse its discretion by leaving its well-reasoned remedial orders in effect.  And this Court should not be in the business of deciding when one executive branch agency ought to defer to another's non-binding decisions.  That is particularly true where, as here, the President rejected Arista's policy arguments during the statutory review that occurred before the ITC's orders took effect.  No court has granted the sort of relief Arista requests, and this case is no opportunity to rewrite the law.

Regardless, the equities favor leaving the remedial orders in place. Cisco and Arista are direct competitors with similar products, with Arista's products using the patented technology that it copied from Cisco. Any sales Arista makes during a stay would cost Cisco goodwill and business opportunities, mirroring many of Arista's purported harms. And the harm to Cisco from a stay would be even worse because any stay will almost certainly last through the term of the '577 patent, which expires June 30, 2018. This Court has denied stays in similar circumstances, and the possibility of damages in a district court action—relief that depends on Cisco prevailing in a separate suit that remains stayed at Arista's request—cannot replace the Commission's unique remedy.

Unlike Cisco, Arista will suffer no irreparable harm. The remedial orders have been in effect for two months and the sky has not fallen. Meanwhile, Arista and its surrogates' public statements contradict Arista's predictions of dire harm. Arista recently told investors that it projects the same revenues this quarter as in its recent "record quarter," has been planning for exclusion orders for over two years, and plans to launch commercially acceptable redesigns *this month*. Arista's surrogates have publicly dismissed the orders as "no big deal" and "a small bump in the road." The remaining alleged harms, including the resources needed to release a re-design, are the expected inconveniences of being an adjudged infringer. Having

intentionally copied Cisco's technology and patents, Arista must accept the unsurprising consequences.

The purported harms to Arista's customers from the remedial orders are similarly unavailing. The remedial orders do not affect devices customers purchased before those orders took effect, and this is not a situation where customers have unfulfilled needs other vendors cannot satisfy. Indeed, the Commission found Cisco can meet market demand. Regardless, the inconveniences associated with purchasing future switches from other vendors or integrating Arista's redesigned devices are not the kind of truly irreparable harm that justifies such extraordinary relief. Instead, the Court can consider the PTAB appeals on the current expedited schedule—after which Cisco is confident its patents will survive.

Leaving the remedial orders in place is likewise in the public interest here. The purpose of ITC proceedings is to provide American intellectual property holders, like Cisco, with rapid relief against unfair importation practices. Staying the remedial orders interferes with that congressional mandate. Arista's contrary arguments re-hash the irreparable harm arguments the Commission rejected at the remedial phase, and assume Arista's preferred conclusion about the patents' validity—an assumption that disregards the fact that this Court must agree with the PTAB (and disagree with the Commission) *before* any claims can be cancelled. There is no public interest in favoring the PTAB's decisions over the Commission's.

That is particularly so given this motion arises against the backdrop of the constitutional challenges to IPRs in *Oil States Energy Services v. Greene's Energy Group*.

At bottom, any harm to Arista is of its own making. It does not come to this Court with clean hands. Arista knew about one of the asserted patents—its founders invented that technology while Cisco employees—and willfully blinded itself to the other (which a Cisco engineer invented while working for current Arista executives who were still at Cisco at the time of patenting), and built a new business copying Cisco technology. Arista could have challenged Cisco's patents before releasing products it knew infringed. Instead, Arista profited from its deliberate infringement and waited to be sued. Arista now attempts to subvert the normal process of seeking a stay in the agency by filing its motion *two days* after briefing concluded on its still-pending stay motion in the ITC, relying on customer declarations never presented to the Commission. Rather than rewarding its gamesmanship, the Court should deny Arista's motion.

## BACKGROUND

The patents at issue—U.S. Patent Nos. 6,377,577 (Ex. 16) and 7,224,668 (Ex. 17)—concern control-plane security and hardware-based enforcement of access-control lists on devices, like Ethernet switches, that form the backbone of modern networks. Cisco and Arista directly compete in the market for high-speed data-

4

center switches, and both offer products based on the '577 and '668 patents' technologies. Ex. 15, 945 ID 113-14, 224-27; Ex. 1, Cisco Decl. ¶¶7-8. Although other means existed to solve the security issues covered by Cisco's technologies (as the ITC found, none are "industry standard"), Arista's executives and engineers, in a rush to market, intentionally copied what they had developed while at Cisco.

## A.    Commission Investigation

This appeal stems from a complaint Cisco filed at the International Trade Commission in December 2014. 80 Fed. Reg. 4313, 4313-14 (Jan. 27, 2015). The Administrative Law Judge issued a final initial determination in December 2016, finding Arista infringed the '577 and '668 patents. 945 ID 242. The ALJ found Arista copied Cisco's technology when developing its products, knew its products would infringe the '577 patent, and took "deliberate steps to avoid learning" it infringed the '668 patent. *Id.* at 108, 122, 125, 218. The ALJ further found that assignor estoppel barred Arista from challenging the '577 patent's validity and rejected Arista's invalidity challenges to the '668 patent. *Id.* at 120-28, 227-38.

The Commission affirmed the ALJ's findings, issuing the recommended limited-exclusion and cease-and-desist orders in May 2017. Ex. 13, 945 Comm'n Op. 30-31, 113-14, 123-24, 126. It confirmed "Arista willfully blinded itself to Cisco's patents and Arista's infringement," noting "Arista copied certain patented features of Cisco's products and marketed those features to its customers." *Id.* at

5

109-10.  The remedial orders were stayed during the 60-day presidential review period, which expired on July 3.  19 U.S.C. §1337(j).

### B.    PTAB *Inter Partes* Review Proceedings

During the presidential review period, the PTAB issued final written decisions finding obvious the claims the Commission found infringed and not invalid.  Ex. 6, Paper 53 at 2, IPR2016-00303 (May 25, 2017); Ex. 5, Paper 52 at 2, IPR2016-00309 (June 1, 2017).  Its decisions ignored the claimed inventions' purposes, read out limitations, and misconstrued Cisco's arguments.  And it did not have the evidence of copying presented to the Commission, which Arista broadly designated as confidential in the ITC proceedings.  The PTAB also refused to apply assignor estoppel in its decision on the merits concerning the '577 patent, categorically holding that equitable relief is unavailable in IPRs.  Ex. 6 at 7-8.

Cisco appealed.  Nos. 17-2336, 17-2384.  This Court entered agreed-upon expedited schedules in both appeals.  Briefing concludes in November.

### C.    Arista's Attempts To Delay Enforcement Of The Commission's Remedial Orders

After the PTAB's decisions, Arista asked the U.S. Trade Representative to disapprove the Commission's action based on the PTAB's findings.  Ex. 8, Arista's Supplemental USTR Submission 2 (June 7, 2017).  The Trade Representative, as the President's delegate (*see* 70 Fed. Reg. 43,251 (July 21, 2005)), rejected those arguments, allowing the orders to take effect on July 4, 2017.

Arista also petitioned the Commission to modify, suspend, or rescind the remedial orders pending appeal of the PTAB's decisions. Arista did not submit any customer declarations in support. The Commission unanimously denied Arista's petition. Ex. 14, July 25 Comm'n Op. 9-10. It explained that the PTAB decisions were non-binding and subject to judicial review before any claims could be cancelled. *Id.* at 12. The Commission also "decline[d] to entertain Arista's attempt to resurrect" its arguments about purported hardships, reiterating that monetary damages in other proceedings cannot substitute for an exclusion order's unique relief. *Id.* at 16-17. The Commission thus concluded the PTAB's decisions did not "warrant revisiting the Commission's prior determination concerning the public interest." *Id.* at 15-16.

Arista next asked the Commission to stay its orders pending appeal, without offering new evidence. Cisco's response argued "Arista has not shown it will suffer any irreparable harm if the remedial orders remain in place" and identified significant harm to Cisco if the remedial orders were stayed, as documented in the Commission's prior decisions. ITC Cisco Resp. to Stay Mot. 4, 24-29 (Aug. 3, 2017). Arista lodged a proposed reply on August 11, and Cisco responded on August 23. Arista filed its motion here on August 25, *two days* after briefing concluded on Arista's still-pending motion in the ITC.

7

## ARGUMENT

Stays pending appeal "intru[de] into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009). Accordingly, this Court should grant a stay "only under extraordinary circumstances." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (Blackmun, J., in chambers). Those concerns are heightened where a party asks one branch of government to stay the order of another. Arista must justify a stay, considering the (1) likelihood *Arista will prevail on the merits of this appeal* (something Arista does not address); (2) the likelihood Arista will be irreparably harmed absent a stay; (3) the prospect that a stay will harm Cisco, the ITC, and others; and (4) the public interest. *Nken*, 556 U.S. at 433-34. Arista must "satisfy *all* of the requirements for a stay, including a showing of a *significant possibility* of success on the merits" of *this* appeal. *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (emphasis added); *Merial Ltd. v. Cipla Ltd.*, 426 F. App'x 915, 915 (Fed. Cir. 2011). Applying the four stay factors, this Court routinely denies stays pending appeal. It should do so here.

## I. ARISTA IS UNLIKELY TO SUCCEED IN THIS APPEAL

### A. Arista Cannot Show It Is Likely To Succeed On The Merits Of *This* Appeal

Arista's likelihood-of-success arguments are a policy proposal masquerading as legal argument. Although it seeks to stay the *Commission's* orders, Arista does not even argue it is likely to succeed on the merits of *this appeal* or identify *any*

8

errors in the Commission's analysis. Arista instead argues that the remedial orders should not be enforced *for policy reasons* when the PTAB invalidates infringed claims in non-final, collateral decisions subject to appeal.

If Congress so intended, it could have said that by giving PTAB determinations immediate collateral-estoppel effect or by requiring a stay of other proceedings. *Cf. Blonder-Tongue Labs. v. Univ. of Ill. Foundation*, 402 U.S. 313 (1971). Instead, Congress adhered to the pre-AIA approach, in which PTO unpatentability findings by themselves have no effect. 35 U.S.C. §318(b). By statute, claims remain valid and enforceable unless and until the PTO cancels them *after* exhaustion of all appeals. *Id.*; *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1339, 1344 (Fed. Cir. 2013). That has not happened here, and should never happen given the PTAB's legal errors.

Arista resorts to the novel argument that the PTAB decisions could someday moot the Commission's orders. Because the PTO may eventually cancel the '577 and '668 patents' claims in a collateral proceeding, and because cancelling those claims would require vacating the Commission's infringement findings *if* this appeal remains pending when cancellation occurs, Arista contends it is likely to "win" this appeal. That is Arista's entire likelihood-of-success argument.

This would be unprecedented relief. Cisco knows of no case—and Arista identified none—in which a court stayed enforcement of agency action based on

non-final, non-binding actions of another agency. That is unsurprising. Whether the ITC should stay its hand based on another agency's actions is an issue for the executive branch. Arista presented its arguments based on the PTAB decisions during the presidential review period, contending "[s]uch circumstances are exactly why Congress vested the President with broad authority to disapprove an ITC determination for *any* policy reason." Ex. 8 at 2 (emphases in original). The Trade Representative, as the President's delegate, rejected those arguments, permitting the remedial orders to take effect.

Arista's request for a court order second-guessing that decision is not just unseemly—it contradicts this Court's decisions in similar circumstances. The Court has twice declined to stay ITC remedial orders based on non-final PTO decisions invalidating the infringed claims. *Spansion v. ITC*, 2009 WL 2876448, at *1 (Sept. 8, 2009); *TPV Tech v. ITC*, No. 2009-1386, ECF No. 41 (July 29, 2009); *see* Petitioners' Reply at 6, *Spansion v. ITC*, 2009 WL 8749543 (Aug. 3, 2009). The same potential mootness concerns animating Arista's request existed in those cases, yet this Court twice found the parties "ha[d] not met their burden to obtain a stay." *Spansion*, 2009 WL 2876448 at *1. Moreover, this Court and the Supreme Court have declined to stay execution of a non-recoverable money judgment based on an intervening issuance of a PTAB invalidity decision, where that decision had not yet

10

resulted in any claims' cancellation. *SAP AG v. Versata Computer Indus. Solutions*, No. 14A49 (U.S. July 24, 2014).

Arista relies heavily on three other decisions, but none support its request. *ePlus v. Lawson Software, Inc.* actually *declined to stay* an injunction and contempt order, and the PTO's decisions did not meaningfully influence this Court's order or the district court's decision. No. 13-1506, ECF No. 29 (Sept. 19, 2013); Appellant's Stay Motion at 9-16, No. 13-1506, ECF No. 23 (Sept. 11, 2013). *Butamax(TM) Advanced Biofuels LLC v. Gevo, Inc.* stayed a procedurally bizarre injunction pending appeal when the district court had also denied a preliminary injunction, without ongoing PTO proceedings meaningfully factoring into the briefing or the Court's decision. No. 12-1490, ECF No. 47 (Aug. 10, 2012); Cross-Appellant's Stay Motion at 6-11, No. 12-1490, ECF No. 24 (July 9, 2012). Even *Standard Havens* did not hold the possibility of future developments mooting the decision under review established a likelihood of success. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 (Fed. Cir. 1990).

This Court should not embrace the novel proposition that PTAB decisions trump the Commission's, especially where the entire IPR regime is under review. In *Oil States*, the Supreme Court will decide "[w]hether *inter partes* review … violates the Constitution by extinguishing private property rights through a non-Article III forum without a jury." 2016 WL 6995217 at i (Nov. 23, 2016). Although Cisco

11

supports the IPR process, the possibility that the Supreme Court may invalidate that process altogether makes it far from certain that affirming the PTAB's decisions "*necessarily* will result in" cancellation of the claims and "vacatur of the Commission's orders," Arista Mot. 12, even if those decisions were correct (they are not).

## B.   The PTAB's Decisions Are Legally Irrelevant And Deeply Flawed

Arista's likelihood of success in the PTAB appeals is legally irrelevant to *this* appeal.  Regardless, it is dubious the PTAB's collateral decisions will be affirmed.

The Board declined to apply assignor estoppel in its final written decision on the merits concerning the '577 patent, holding the doctrine categorically unavailable in *inter partes* reviews because Congress did not explicitly say equitable doctrines apply in IPRs.  Ex. 6 at 10.  That is exactly backwards.  Assignor estoppel is the sort of well-established non-statutory doctrine *presumed* to apply—even in administrative proceedings—unless strong evidence shows Congress intended otherwise.  *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1536 (2017); *Rios v. Nicholson*, 490 F.3d 928, 931 (Fed. Cir. 2007).  No such evidence exists.

Arista does not defend the PTAB's categorical refusal to apply assignor estoppel.  Instead, it contends *Husky Injection Molding Sys. Ltd. v. Athena Automation Ltd.*, 838 F.3d 1236 (Fed. Cir. 2016), forecloses this Court's

"jurisdiction to review" that decision. Arista Mot. 10. Arista fundamentally misreads *Husky*, while misrepresenting Cisco's arguments to the Board. *Husky* concerned a challenge to the Board's *institution* decision. 848 F.3d at 1245 ("Husky's appeal challenges the institution decision."). Although 35 U.S.C. §314(d) makes *institution* decisions generally unreviewable, no statute bars review of the PTAB's substantive merits rulings in its post-institution decision. Here, unlike *Husky*, Cisco raised assignor estoppel *on the merits* during *the merits phase*. *E.g.*, Ex. 7, Paper 19 at 58, IPR2016-00303 (Sept. 29, 2016) ("Arista is estopped from challenging the validity of the '577 patent because of assignor estoppel."). And it was *at the merits phase* that the Board failed to consider assignor estoppel. Cisco's appeal will not challenge the Board's institution decision, but rather its failure to apply substantive patent law *post*-institution.

This Court can review *that* argument. In *Versata Dev. Grp., Inc. v. SAP America, Inc.*, 793 F.3d 1306 (Fed. Cir. 2015), this Court held that an argument relevant to institution can still be reviewed if that issue *also* bears on the "merits of the final written decision that are on appeal," and was presented at the merits phase. *Id.* at 1315; *see Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1051 (Fed. Cir. 2017). Arista argues otherwise by mischaracterizing this Court's summary of *SAP's argument* as the Court's holding. Arista Mot. 11 (quoting *Versata*, 793 F.3d at 1319). But SAP *lost*.

13

Beyond failing to apply assignor estoppel, the PTAB read the '577 and '668 patents' claims in ways that are irreconcilable with the claim language and the inventions described in the specifications, giving them constructions well beyond the "broadest reasonable interpretation"—legal errors reviewed *de novo*. And its analysis of certain obviousness issues fundamentally misunderstood Cisco's positions, leaving Cisco's actual arguments unaddressed. This Court has increasingly reversed the PTAB for such inadequate reasoning. *E.g.*, *Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1042-44 (Fed. Cir. 2017); *Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 992 (Fed. Cir. 2017). Arista's motion is silent on these fundamental errors.

## II.    THE BALANCE OF HARMS FAVORS LEAVING THE REMEDIAL ORDERS IN PLACE

### A.    A Stay Will Substantially Harm Cisco

A stay would cause Cisco substantial harms mirroring almost every harm Arista asserts. The companies directly compete for sales of high-speed data-center switches. Cisco Decl. ¶¶7-8; 945 ID 113-14, 224-27. Allowing Arista to continue selling its infringing switches would cost Cisco sales, goodwill, and business opportunities it would otherwise enjoy. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008). This includes not just lost sales of switches, but also multiyear maintenance contracts and opportunities to sell other Cisco products based on the goodwill Cisco develops through sales and service of its switching products.

14

Cisco Decl. ¶9.  For customers choosing Arista's infringing switches over Cisco's products, "the unique nature of the market" means Cisco "could ███ up to five years' worth of ███," diminishing the '577 and '668 patents' value.  Arista Mot. 17-18; *Celsis In Vitro v. CellzDirect*, 664 F.3d 922, 930 (Fed. Cir. 2012).  Arista's interests should not be favored over Cisco's.

That the '577 patent expires in less than a year underscores the serious harm to Cisco from a stay, which would effectively be permanent.  *See* July 25 Comm'n Op. 16-17.  Exhausting all appeals will likely take the patent's remaining term, virtually guaranteeing no Commission relief for Arista's infringement of that patent—even if Cisco prevails in the PTAB appeals.   Potential money damages in a district court action—which depends on Cisco prevailing in another suit—cannot replace the Commission's unique remedy.  *See Suprema v. ITC*, 796 F.3d 1338, 1345, 1352 (Fed. Cir. 2015) (*en banc*); *Farrel Corp. v. ITC*, 949 F.2d 1147, 1155 & n.9 (Fed. Cir. 1991).  This Court has thus declined to stay ITC remedial orders that would last through a patent's remaining life.  *Spansion*, 2009 WL 2876448, at *1; Tessera Sur-Reply at 1, *Spansion v. ITC*, 2009 WL 8749542 (Aug. 4, 2009).  It should do so here.

Arista's remaining arguments do not diminish the substantial harm a stay would impose.  "Cisco had no knowledge of Arista's infringing activities with regard to the '668 [and] '577 [patents] until approximately June 26, 2014"—six months

CONFIDENTIAL MATERIAL OMITTED

before filing its ITC complaint—and did not unreasonably delay bringing suit.  945 ID 273.  And Arista's argument that Cisco is indifferent to its patent rights by purportedly not enforcing against others is unsupported speculation designed to distract from Arista's culture of copying.  945 ID 265-66; Cisco Decl. ¶12.

### B.    Enforcing The Remedial Orders Will Cause Arista No Irreparable Harm

The balance of harms likewise disfavors a stay.  Although a stay threatens Cisco significantly, Arista will suffer no irreparable harm without one.  Arista largely repackages the arguments from its earlier ITC petitions (and before that, its public-interest briefing), including that it risks alienating customers and ███████ without a stay.  Arista Mot. 12-14, 17-18.  But the Commission and the Trade Representative rejected these generic arguments nearly any company subject to an exclusion order could make.  July 25 Comm'n Op. 14-15; 945 Comm'n Op. 132-34.  Moreover, Arista's tale of woe contradicts its public statements.

While its made-for-litigation declaration claims significant harm, Arista recently told investors that, despite the remedial orders, it forecasts revenues this quarter matching its "record quarter" earlier this year.  Ex. 9, Arista Earnings Call Tr. 2, 4 (Aug. 3, 2017).  Arista simultaneously told investors it is "at scale with our U.S. contract manufacturer and believe[s] we have the capacity to support U.S. customer demand from this site," *id.* at 4, with Arista's CEO confirming an "uninterrupted supply to [Arista's] international customers," *id.* at 8.

16

The supposedly "huge investment of time, money, and resources" necessary to redesign its infringing products has also *already occurred*. Arista Mot. 3, 13. Last month, Arista's CEO claimed Arista had been pursuing potential "workarounds" for "almost two years" and is "in the midst of active beta testing." Ex. 9 at 7; *see id.* at 10 (a "strategy [Arista] set up … quite some time ago"). She elaborated that Arista planned to finish customer certification and release of those redesigns to all of its customers *this month*. *Id.* at 8, 10 (shipments "will be back-end loaded to September to accommodate some of the customer certifications"). Irreparable harm requires evidence Arista suffer will *future* harm absent a stay, not that it incurred expense or inconvenience *in the past*. *See Nken*, 55 U.S. at 434; *Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1, 4 (1st Cir. 1997).

Arista's media surrogates similarly downplayed the remedial orders' significance. One "Arista partner" said "they don't expect much disruption," and do not see the exclusion order "as a big deal." Ex. 10 at 1, *Cisco, Arista Trade Barbs After US Product Import Ban Upheld*, CRN (July 21, 2017). Another explained that, based on his company's customer surveys, "[w]e haven't seen much concern around the [Cisco-Arista lawsuits]," describing the exclusion orders as "a small bump in the road for Arista." *Id.* That is because "Arista has been planning for this for the last two years," while "also ramping up their U.S.-based manufacturing." *Id.*; *see* Ex. 11 at 1, *Arista Relies on Domestic Inventory with Design Approval Pending*,

BLOOMBERG INTELLIGENCE (Jul. 24, 2017). These statements, made *the same day* Arista filed its stay motion in the ITC, significantly undermine Arista's claims of irreparable harm.

Arista's remaining alleged harms, including the time and expense of supporting its attempted redesigns, are expected inconveniences of being an adjudged infringer. If they are irreparable harm, then such harm exists in every appeal of Commission remedial orders. No court follows this approach. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."); *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980).

Arista's claims that the harm here is accentuated because the patents cover "industry-standard features" are blatantly false. As the Commission found, the patents relate to *no* industry standards, and the infringing features' popularity "does not render that technology a 'de-facto standard.'" 945 Comm'n Op. 134. That customers expect security does not transform Cisco's patented means of achieving it into a standard.

Moreover, any purported harm from continued enforcement of the remedial orders is Arista's own fault. Arista knew about the '577 patent—its founders co-invented it at Cisco and were compensated when it issued—and "willfully blinded itself" to the '668 patent before releasing the infringing products. 945 Comm'n Op.

109-110, 113-14; 945 ID 108-09, 121-25, 215-19.  Arista could have challenged those patents earlier, but instead copied Cisco's technology, built its business on the patented features, and waited to be sued.  "[W]hen a party knew of the risk that it undertook when it undertook the enjoined activity," the resources expended "complying with the injunction will seldom be irreparable."  *Baker v. Adams County/Ohio Valley School Bd.*, 310 F.3d 927, 930 (6th Cir. 2002) (denying stay); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010).

Arista claims the remedial orders "harm[] [its] customers," Arista Mot. 14, but "the effect on customers … is irrelevant" to the balance of harms.  *Accumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1330 (Fed. Cir. 2008) ("[T]he balance considered is only between a plaintiff and a defendant.").  Regardless, the harms Arista's customers allege—in declarations never presented to the Commission—are not irreparable and show no public interest in delaying enforcement of the Commission's orders.  One of the customers Arista claims would be irreparably harmed has made clear that its "inability to obtain Arista equipment subject to the [ITC's] orders *has not and will not cause … substantial or irreparable harm*."  Ex. 2, Bloomberg CTO Decl. ¶¶2-5.

The remedial orders do not prevent customers from using the infringing features in already purchased devices, and those orders permit Arista to honor its warranty-and-support obligations.  945 Comm'n Op. 123-25; Ex. 3 §IV(B); Ex. 4 at

19

2.  Thus, Arista's customers face no new "security concerns" in their existing networks because of the remedial orders.  Arista Mot. 21.  (A CTO of one customer Arista points to says his company "is not aware of any security issues that may arise within [its] network as a result of Arista's compliance with the ITC orders."  Ex. 2 ¶5.)  Given the warranty-and-support carve out, even if the orders remain in place during the PTAB appeals, there is also no reason for Arista customers to scuttle their recently purchased switches.  *See, e.g.*, SIX Decl. ¶5.  To the extent Arista removes support for the infringing features for existing customers, that is its voluntary decision, not a necessary consequence of the ITC's remedial orders.  *See Accumed*, 551 F.3d at 1330.

Beyond these misplaced concerns, Arista's customers recount inconveniences associated with any significant software release.  They complain that qualifying Arista's redesigned switches takes time and diverts resources, without explaining how that differs from the qualification and distraction involved whenever Arista releases a major software upgrade—something Arista does at least annually.  *See* Ex. 12, EOS Life Cycle Policy.  Arista similarly fails to explain how customers' "tak[ing] their networks offline, making their offerings … unavailable to the public" while installing Arista's redesigned products—a harm no customer acknowledges— differs from any other installation of new hardware (and the ITC's orders do not require replacing existing switches).  Arista Decl. ¶15.

20

Customers finding Arista's redesigns unacceptable have alternatives available from other vendors, including Cisco. Ex. 2 ¶¶3-5. Cisco sells switches providing the features customers require, and can satisfy relevant market demand. 945 Comm'n Op. 134; Cisco Decl. ¶¶7-11. The inability to purchase a product from one particular vendor is not significant or irreparable harm.

If Arista did not prepare itself or its customers for the remedial orders' consequences, that is Arista's fault. The ITC investigation began over two and a half years ago, the ALJ recommended issuance of the remedial orders last December, and the Commission issued those orders subject to presidential review in May. Arista need not have delayed testing, certification, and training until now.

## III.    THE PUBLIC INTEREST SUPPORTS DENYING A STAY

The public interest strongly supports leaving the remedial orders in place. This Court rarely stays ITC remedial orders for a reason, and, to Cisco's knowledge, has never stayed one based on a non-final PTO decision. "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015). That is especially true in ITC proceedings, which aim to provide "rapid relief against unfair importation practices." *Certain High-Brightness Light Emitting Diodes*, Inv. No. 337-TA-556, Comm'n Op., 2008 WL 2556199, *7 (June 1, 2008). Staying

enforcement here, and allowing Arista to resume importation, undermines Section 337 by "permit[ting] and prolong[ing] a continuing violation of" U.S. law. *Nken*, 556 U.S. at 436.

The circumstances here heighten the public interest in immediately enforcing the ITC's remedial orders. The '577 patent expires soon—making enforcement of the remedial orders as to it "now or never"—and Arista's intentional copying and infringement are particularly egregious. Arista has unclean hands. *See Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1435 (7th Cir. 1986). The '577 patent's named inventors founded Arista, helped develop its infringing products, and built its business on copying Cisco's patented technology. 945 Comm'n Op. 109-110, 113-14; 945 ID 108-09, 121-25, 215-19. These extraordinary circumstances warrant preventing continued infringement while the '577 and '668 patents remain valid and enforceable—which they are. *See* 35 U.S.C. §318(b); *Fresenius*, 721 F.3d at 1339, 1344.

Arista's arguments that the public will "suffer absent a stay" again rest on made-for-litigation declarations contradicting its public assurances. Arista Mot. 21. And they largely repackage its irreparable-harm arguments and the public-interest arguments *both* the Commission *and* Trade Representative rejected. Arista Mot. 21; *see* July 25 Comm'n Op. 14-15; 945 Comm'n Op. 132-34. Those decisions deserve "considerable deference." *Ruckelshaus*, 463 U.S. at 1317.

22

Arista cannot simply point to the PTAB decisions and the policy against enforcing invalid patents. That again assumes the PTAB's decisions are *final and binding*, when they are neither. Nor is there any public interest in this Court requiring "defer[ence]" to "the PTAB's specialized patent knowledge and expertise" when the President's delegate has decided otherwise. Arista Mot. 22-23. The Commission too has "technical expertise in deciding issues arising under Section 337." *Suprema*, 796 F.3d at 1352. Particularly where the PTAB refused to apply well-established patent-law doctrines, when this Court increasingly reverses poorly reasoned PTAB decisions, and given the constitutional challenges in *Oil States*, there is no reason to favor the PTAB's decisions over the Commission's.

## CONCLUSION

The Court should deny Arista's motion.

September 8, 2017                                Respectfully submitted,

*/s/ John C. O'Quinn*

Adam R. Alper
Michael W. De Vries
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

John C. O'Quinn
Jason M. Wilcox
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Paul M. Bartkowski
Deanna Tanner Okun
ADDUCI, MASTRIANI & SCHAUMBERG,
LLP
1133 Connecticut Avenue, N.W.
Twelfth Floor
Washington, DC 20036
Telephone: (202) 407-8642
Facsimilie: (202) 466-2006

*Counsel for Cisco Systems, Inc.*

# CERTIFICATE OF INTEREST

**1. The full name of the party represent by me:**

Cisco Systems, Inc.

**2. The name of any real party in interest represented by me, and not identified in question 3:**

None.

**3. All parent corporations and publicly held companies that own 10% or more of stock in the party represented by me:**

None.

**4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:**

KIRKLAND & ELLIS LLP: Steven Cherny, Sean Trainor, Sarah Piepmeier, Brian Gearing, John Edwards, Brandon Brown, Eric Cheng, Amit Makker, Lien Dang, Michael Reza Dokhanchy, Mangesh Kulkarni, Amir Freund, Darryl Ong, Elise Edlin, Mark Fahey, Sarah Piazza, Elliot Hales, Brian Featherstun, Nikhil Krishnan, Michael Wueste, Joshua Simmons, Nimalka Wickramasekera, Amanda Hollis, Diwei Zhang, Jodie Cheng, Susan Davies, William H. Burgess, Akshay Deoras, Justin Singh, Oliver Bennett, Robert Taylor, Seth Traxler, James Marina, Craig Murray, Zach Ruby, Robert Kang, Marc Child, Dennis Abdelnour, Brian Gold, Anders Fjellstedt, Kaiyi Xie, Kyle Calhoun, Ali-Reza Boloori, Michael Eshaghian, and Benjamin Herbert.

ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.: Michael Doman

WILMER CUTLER PICKERING HALE AND DORR LLP: Michael Esch and David Ross

HANES AND BOONE, LLP: David McCombs and Theodore Foster

RUTTENBERG IP LAW: Guy Ruttenberg

DUANE MORRIS LLP: Michael McManus and Matthew S. Yungwirth

Dated:  September 8, 2017                    */s/ John C. O'Quinn*
                                             John C. O'Quinn

# CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A).

1.    Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 27(a)(2)(B), Fed. Cir. R. 32(f), and Fed. Cir. R. 27(d), the response contains 5,185 words.

2.    The response has been prepared in proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


Dated:  September 8, 2017                    */s/ John C. O'Quinn*
                                             John C. O'Quinn

## CERTIFICATE OF COMPLIANCE WITH RULE 27(m)

I hereby certify that this response complies with the limitations set forth in Fed. Cir. R. 27(m) and contains 0 unique words (including numbers) marked confidential that were not already marked confidential in Arista's motion.


Dated:  September 8, 2017                    */s/ John C. O'Quinn*
                                             John C. O'Quinn

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2017, true and correct confidential and non-confidential versions of the foregoing document were filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants, resulting in service upon all counsel of record.

I further certify that on this same day copies of the confidential version of the foregoing document were served on counsel for all parties via email as listed below.

Megan M. Valentine
U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436
megan.valentine@usitc.gov

Gregory G. Garre
Latham & Watkins LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
gregory.garre@lw.com

/s/ *Jason M. Wilcox*
Jason M. Wilcox