Nos. 2017-2289, -2351

# United States Court of Appeals
# for the Federal Circuit

CISCO SYSTEMS, INC.,

*Appellant,*

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

ARISTA NETWORKS, INC.,

*Intervenor.*

ARISTA NETWORKS, INC.,

*Appellant,*

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

CISCO SYSTEMS, INC.,

*Intervenor.*

*Appeal from the United States International Trade Commission,*
*Investigation No. 337-TA-945.*

**BRIEF OF AMICI CURIAE UNIFIED PATENTS INC., HP INC.,
HEWLETT PACKARD ENTERPRISE CO., VIZIO, INC., ALLIANCE OF
AUTOMOBILE MANUFACTURERS, ASSOCIATION OF GLOBAL
AUTOMAKERS, AND CABLE TECHNOLOGY LABORATORIES, INC.
IN SUPPORT OF NEITHER PARTY REGARDING
ARISTA'S <u>EMERGENCY MOTION</u> (Dkt. No. 29)**

KEVIN JAKEL
JONATHAN STROUD
UNIFIED PATENTS INC.
2 North 1st Street, 5th Floor
San Jose, CA 95113
(650) 999-0899

*Counsel for Amicus Curiae*
*Unified Patents Inc.*

PAUL M. SCHOENHARD
NICOLE M. JANTZI
IAN B. BROOKS
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000

*Counsel for Amici Curiae*

## CERTIFICATE OF INTEREST

Counsel for Amicus Curiae Unified Patents, Inc. certifies the following:

1.  The full name of every party or amicus curiae represented by me is:

> Unified Patents Inc., HP Inc., Hewlett Packard Enterprise Co., VIZIO Inc., Alliance of Automobile Manufacturers, Association of Global Automakers, and Cable Technology Laboratories, Inc.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

> N/A

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

> N/A

4.  The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or agency or are expected to appear in this court are:

> **McDermott Will & Emery LLP**: Paul M. Schoenhard, Nicole M. Jantzi, Ian B. Brooks

Respectfully submitted,

/s/ Paul M. Schoenhard
Paul M. Schoenhard
McDermott Will & Emery LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
pschoenhard@mwe.com

*Counsel for Amici Curiae*

## TABLE OF CONTENTS

STATEMENT OF INTEREST OF AMICI CURIAE..............................................iv

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................1

I.    THE PUBLIC INTEREST FAVORS FREE AND FAIR
      COMPETITION ........................................................................................1

II.   THE RELEVANCE OF THE PUBLIC INTEREST TO ITC
      REMEDIES ...............................................................................................3

III.  IT WILL OFTEN BE APPROPRIATE TO STAY ENFORCEMENT
      OF A LIMITED EXCLUSION ORDER UPON ISSUANCE OF A
      PTAB FINAL WRITTEN DECISION FINDING ASSERTED
      CLAIMS UNPATENTABLE........................................................................4

      A.    A Final Written Decision of Unpatentability Generally Supports
            a Finding of a Likelihood of Success ......................................................4

      B.    A Movant Will Generally Be Irreparably Harmed by an
            Exclusion Order .......................................................................................6

      C.    The Comparative Harm to the Patentee Can Be Mitigated if a
            Stay is Entered ........................................................................................7

      D.    The Public Interest Will Generally Favor a Stay Pending
            Appeal of a Final Written Decision ...........................................................9

CONCLUSION ..................................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008) ................................................................6

*Certain Composite Wear Components and Products Containing Same*,
  Inv. No. 337-TA-644, Comm'n Op. (Feb. 10, 2011) ...........................9

*Flexiteek Americas, Inc. v. PlasTEAK, Inc.*,
  No. 08-cv-60996, 2010 WL 2976859 (S.D. Fla. July 20, 2010) .........7

*Lear, Inc. v. Adkins*,
  395 U.S. 653 (1969).............................................................................2, 7

*Pope Mfg. Co. v. Gormully*,
  144 U.S. 224 (1892).................................................................................2

*SmithKline Beecham Corp. v. Apotex Corp.*,
  403 F.3d 1331 (Fed. Cir. 2005) .............................................................2

*Certain Semiconductor Chips with Minimized Chip Package Size and
  Products Containing Same*,
  Inv. No. 337-TA-605, Comm'n Op. (July 29, 2009)...............4, 5, 6, 8

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
  897 F.2d 511 (Fed. Cir. 1990) ...............................................................4

*Certain Steel Rod Treating Apparatus and Components Thereof*,
  Inv. No. 337-TA-97, Comm'n Op. (Jan. 15, 1982)...............................9

*Certain Three-Dimensional Cinema Systems and Components Thereof*,
  Inv. No. 337-TA-939, Comm'n Op. (Aug. 23, 2016) ...........................4

*Certain Two-Handle Centerset Faucets and Escutcheons*,
  Inv. No. 337-TA-422, Comm'n Op. (June 19, 2000)............................3

**Statutes and Regulations**

America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) ...........2

19 U.S.C. § 1337(b)(1)..............................................................................9

19 U.S.C. § 1337(d)(1)..............................................................................3

35 U.S.C. § 314(a) ....................................................................................4

35 U.S.C. § 314(b) ..................................................................................10

35 U.S.C. § 316(a)(11)............................................................................10

35 U.S.C. § 325(e)(2)..............................................................................11

37 C.F.R. § 42.108(c)................................................................................4

19 C.F.R. § 210.51(a)(1)..........................................................................10

**Other Authorities**

157 Cong. Rec. S1360-94 (Mar. 8, 2011)...............................................2, 4

157 Cong. Rec. S5315-45 (Sept. 6, 2011) ................................................2

Average Length of Investigations by Fiscal Year, Completion Time
    (U.S.I.T.C.), *at*
    https://usitc.gov/intellectual_property/337_statistics_average_lengt
    h_investigations.htm ..........................................................................10

Colleen V. Chien and Mark A. Lemley, *Patent Holdup, the ITC, and
    the Public Interest*, 98 Cornell L. Rev. 1, 38 (2012) ...........................8

Paul Schoenhard *et al.*, *How PTAB Proceedings Could Impact the
    ITC's Public Interest Analysis*, 89 PTCJ 1554 (Apr. 3, 2015)...........8

S. Rep. No. 93-1298 (1974) ......................................................................3

## STATEMENT OF INTEREST OF AMICI CURIAE

Amici are technology companies, member organizations, trade associations, and non-profit public interest groups that, individually and collectively, share an interest in addressing the significant public interest in permitting and promoting fair and free competition. Such public interest is disserved by enforcement of exclusionary remedies based on invalid patent claims.

## STATEMENT OF COUNSEL FOR AMICI CURIAE

No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than the amici, their members, or their counsel—contributed money that was intended to fund preparing or submitting the brief.

## INTRODUCTION

The public interest is disserved by enforcement of invalid patent claims.[1] Consistent with this maxim and the International Trade Commission's ("ITC's") obligation to consider the impact of its powerful remedies on the public interest, limited exclusion orders should, in many circumstances, be suspended, rescinded, modified, or otherwise stayed upon consideration of an entry of a final written decision of the Patent Trial and Appeal Board ("PTAB") finding the subject patent claims unpatentable. Failure to appropriately consider the significance of a final written decision of the PTAB is inequitable and improper, and does not serve the public interest.

## ARGUMENT

### I.    The Public Interest Favors Free and Fair Competition

The Supreme Court and this Court have consistently recognized there is a strong public interest in not enforcing invalid intellectual property rights:

> It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly . . . .

---

[1]    Amici do not take a position on the validity or patentability of the specific patent rights at issue in this proceeding.

*Pope Mfg. Co. v. Gormully*, 144 U.S. 224, 234 (1892); *see also Lear, Inc. v. Adkins*, 395 U.S. 653, 656 (1969) (recognizing "the strong federal policy favoring free competition in ideas which do not merit patent protection"); *id.* at 670 (recognizing "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain"); *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1354 (Fed. Cir. 2005) ("[T]he Supreme Court ha[s] recognized that there is a significant public policy interest in removing invalid patents from the public arena.").

The America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011), provided an improved mechanism—*inter partes* review—to address invalid patent claims. *See* 157 Cong. Rec. S5326 (Statement of Sen. Leahy) (Sept. 6, 2011) ("The bill will also improve upon the current system for challenging the validity of a patent at the PTO."); 157 Cong. Rec. S1362 (Statement of Sen. Leahy) (Mar. 8, 2011) ("Patents of low quality and dubious validity . . . constitute a drag on innovation."); 157 Cong. Rec. S1364 (Mar. 8, 2011) (Statement of Sen. Schumer) (IPR proceedings "provid[e] a cost efficient alternative to litigation").

Amici urge this Court to recognize and support the significant role the PTAB plays in safeguarding the public interest in free and fair competition.

2

## II.     The Relevance of the Public Interest to ITC Remedies

"The public interest must be paramount in the administration of section 337." *Certain Two-Handle Centerset Faucets and Escutcheons*, Inv. No. 337-TA-422, Comm'n Op. at 8 (June 19, 2000).  For instance, the ITC may not issue an exclusion order if, "after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry." 19 U.S.C. § 1337(d)(1).  And the need to balance these public interest factors with private interests was emphasized in the legislative history of Section 337:

> Should the Commission find that issuing an exclusion order would have a greater adverse impact on [the public interest] than would be gained by protecting the patent holder (within the context of U.S. patent laws) then the [Senate Finance] Committee feels that such exclusion order should not be issued.

S. Rep. No. 93-1298, at 197 (1974).

The Commission, implicitly recognizing this, has suspended enforcement of an exclusion order pending appeal when claims were found unpatentable by the PTAB.[2]  It has not, however, expressly recognized the strong public interest significance of PTAB final written decisions to the Commission's remedies.

---

[2]     In *Certain Three-Dimensional Cinema Systems and Components Thereof*, the Commission suspended enforcement of an exclusion order as to asserted claims of

(continued…)

3

**III.    It Will Often Be Appropriate to Stay Enforcement of a Limited Exclusion Order upon Issuance of a PTAB Final Written Decision Finding Asserted Claims Unpatentable**

Proper consideration of the four-factor test employed by this Court and the ITC[3] will generally yield the conclusion that a stay of enforcement of a limited exclusion order is appropriate upon an intervening issuance of a PTAB final written decision finding asserted claims unpatentable.

**A.    A Final Written Decision of Unpatentability Generally Supports a Finding of a Likelihood of Success**

Preliminarily, the standard for institution of IPR proceedings is "reasonable likelihood that at least one of the claims challenged in the petition is unpatentable." 37 C.F.R. § 42.108(c); *see also* 35 U.S.C. § 314(a).  This standard was intended to correspond to the identical "reasonable likelihood of success" test employed by district courts when determining whether to grant a preliminary injunction. 157 Cong. Rec. S1375 (Statement of Sen. Kyl) (Mar. 8, 2011).  Accordingly, even

---

a patent pending appeal of the PTAB's final written decision finding all but one of those claims unpatentable.  Inv. No. 337-TA-939, Comm'n Op. at 60 (Aug. 23, 2016).

[3]    *Certain Semiconductor Chips with Minimized Chip Package Size and Products Containing Same*, Inv. No. 337-TA-605, Comm'n Op. at 3 (July 29, 2009); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990).

the PTAB's institution decisions in IPR proceedings may be probative of a likelihood of success on the merits.[4]

A final written decision of the PTAB, more so. As of the date of filing of this brief, this Court has decided 219 appeals from final written decisions of the PTAB. Of those, 162 decisions were affirmed—an affirmance rate of 74%.[5]

Given the standards employed by the PTAB at both the institution phase and in reaching its final written decision, and the statistically low reversal rate of those decisions by this Court, the first factor of the stay analysis will generally be met.[6]

Nonetheless, rather than consider the likelihood that the PTAB's unpatentability determination will be upheld on appeal, the Commission has improperly focused on whether "the Commission has ruled on an admittedly difficult question." *Certain Semiconductor Chips with Minimized Chip Package Size and Products Containing Same*, Inv. No. 337-TA-605, Comm'n Op. at 3-4 (July 29, 2009). More, in the investigation below, the Commission went so far as to *refuse to consider* the PTAB's decisions at all, stating that "arguments

---

[4]    *Cf. Certain Semiconductor Chips with Minimized Chip Package Size and Products Containing Same*, Inv. No. 337-TA-605, Comm'n Op. at 3 (July 29, 2009) ("[T]he Commission has applied the four-prong test used by courts to determine whether to grant a preliminary injunction").

[5]    An additional 24 decisions (11%) were affirmed-in-part.

[6]    Amici expressly take no position on the strength of the specific arguments that may be presented by Cisco and/or Arista during any appeal(s) of the PTAB's final written decisions pertinent here.

[concerning the soundness of the PTAB's decisions and the likelihood that they will be affirmed on appeal] have *no bearing* on the Commission's decision." Comm'n Op. (July 25, 2017), at 18 (emphasis added). This approach abdicates the ITC's Congressional mandate to vouchsafe the public interest in not excluding goods based on an invalid patent, and willfully ignores facts highly probative of the "likelihood of success" factor.

## B.    A Movant Will Generally Be Irreparably Harmed by an Exclusion Order

If an exclusion order is enforced based on an invalid patent claim, the party whose goods are excluded will generally suffer irreparable harm at least in the form of lost sales and market share during the period of exclusion. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361-61 (Fed. Cir. 2008).

Nonetheless, the Commission has improperly focused on the magnitude rather than the nature of the harm the movant will experience. *See, e.g.*, *Certain Semiconductor Chips*, Inv. No. 337-TA-605, Comm'n Op. at 7-8 (July 29, 2009). Although the magnitude of irreparable harm may play a role in balancing the four stay factors, disregarding irreparable harm entirely is inappropriate.[7]

---

[7]    In *Certain Semiconductor Chips*, the Commission suggested any harm to an excluded respondent could be mitigated by taking a license, but such a suggestion is a fallacy where, as in that circumstance, the suggestion is made in response to a request for a stay pending reexamination proceedings. *Cf. Lear*, 395 U.S. at 670 ("Surely the equities of the licensor do not weigh very heavily when they are

(continued…)

### C.   The Comparative Harm to the Patentee Can Be Mitigated if a Stay is Entered

The harm of a stay to the patentee will generally be less than the harm to an excluded party,[8] and may be mitigated by other, more flexible, remedies. For example, while the Commission has raised the concern that ITC remedies and district court remedies are not meant to substitute for one another, *Certain Semiconductor Chips with Minimized Chip Package Size*, Inv. No. 337-TA-605,

---

balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification.").

[8] An exclusion order is not the same as a permanent injunction. But the two forms of relief are sufficiently analogous for this Court to look to how courts have treated the enforcement of permanent injunctions pending appeals from PTO proceedings. For example, in *Flexiteek Americas, Inc. v. PlasTEAK, Inc.*, Judge Cohn opined on the relative harm faced by the parties to such a situation:

> Plaintiffs assert that if the Court terminates the Permanent Injunction it will leave the Plaintiffs vulnerable to years of unfair competition by the Defendants. Plaintiffs' argument depends on the assumption that Plaintiffs will ultimately succeed in their appeal of the PTO's decision. If the Plaintiffs are not successful, however, the Defendants could have their business impaired for years by an invalid patent if the Permanent Injunction is not terminated. Indeed, it is far more difficult to determine how much money Defendants *could* have made if the Permanent Injunction stands and the PTO's decision is upheld, as opposed to the amount of damages suffered by Plaintiff if the Permanent Injunction is terminated and the PTO's decision is reversed.

No. 08-cv-60996, 2010 WL 2976859, at *6 (S.D. Fla. July 20, 2010) (internal quotation marks and citations omitted; emphasis in original).

Comm'n Op. at 5 (July 29, 2009), money damages nonetheless are intended to serve as reasonable compensation.

In addition, the Commission may impose a bond while the PTAB's final written decision is under review.  *See* Paul Schoenhard et al., *How PTAB Proceedings Could Impact the ITC's Public Interest Analysis*, 89 PTCJ 1554 (Apr. 3, 2015) ("To mitigate any harm to a complainant-patent holder stemming from a delay in the implementation of a remedy under this approach, the ITC could require payment of a bond, much like the exclusion order bonds that may be paid during the Presidential Review period and the bonds that the ITC orders from time to time in connection with temporary exclusion orders."); Colleen V. Chien and Mark A. Lemley, *Patent Holdup, the ITC, and the Public Interest*, 98 Cornell L. Rev. 1, 38 (2012).  The Commission considered such an approach in *Certain Composite Wear Components and Products Containing Same*, but declined to impose such a bond, because the complainant had not properly addressed the four-factor test.  Inv. No. 337-TA-644, Comm'n Op. at 9-10 (Feb. 10, 2011).  And in *Certain Steel Rod Treating Apparatus and Components Thereof*, albeit in the context of expedited proceedings, the Commission temporarily rescinded an exclusion order but imposed a 100% bond to maintain the status quo pending review of a district court invalidity determination. Inv. No. 337-TA-97, Comm'n Op. at 3 (Jan. 15, 1982).

**D.      The Public Interest Will Generally Favor a Stay Pending Appeal of a Final Written Decision**

Finally, in most circumstances, the public interest will favor a stay pending appeal of a final written decision of the PTAB.  As discussed in Section I above, there is a strong public interest in full and fair competition.  Indeed, the PTAB was constituted, in large part, to support the public interest in ensuring patent quality; failure to recognize the significance of the PTAB's final written decisions thwarts that public interest.

The concern raised here is further highlighted by comparing the timelines of ITC and PTAB proceedings.  The ITC is required by statute to complete its investigations "at the earliest practicable time after the date of publication of notice of such investigation."  19 U.S.C. § 1337(b)(1).  Consistent with this mandate, the ITC has adopted a rule that any "target date" that exceeds 16 months from the date of institution must be set by initial determination (rather than order), subject to Commission review.  19 C.F.R. § 210.51(a)(1).  Indeed, the average length of investigations in which the Commission rendered a final determination on the merits in 2016 was 15.8 months, with the longest such investigation completed in 21 months.  *See* Average Length of Investigations by Fiscal Year, Completion Time (U.S.I.T.C.), *at* https://usitc.gov/intellectual_property/337_statistics_average _length_investigations.htm.

9

Meanwhile, by statute the PTAB is expected to complete IPR proceedings within one year of institution. 35 U.S.C. § 316(a)(11). And IPR proceedings are generally instituted within three months of a patent owner preliminary response (or of the deadline for receipt of such response), which is due three months after the PTAB issues its notice according a filing date to an IPR petition. *See* 35 U.S.C. § 314(b). Accordingly, a final written decision of the PTAB in an IPR proceeding generally issues approximately 18 months from the date a petition is filed.

Comparing these timelines, it is evident that it will be the rare case when a named respondent in an ITC complaint will be able to file an IPR petition quickly enough to obtain a final written decision from the PTAB prior to issuance of the Commission's final determination. But Congress did not intend that respondents to ITC proceedings be prevented from challenging the patentability of asserted patents at the PTAB. To the contrary, it was recognized that respondents in ITC proceedings may also be petitioners in PTAB proceedings. Congress expressly identified ITC Section 337 proceedings as a type of proceeding in which Section 325 estoppel applies.[9] It would be particularly inequitable and harm the public's

---

[9]    The estoppel provision reads in relevant part as follows: "The petitioner in a post-grant review of a claim in a patent under this chapter that results in a final written decision under section 328(a), or the real party in interest or privy of the petitioner, may not assert . . . in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 that the claim is invalid
(continued…)

interests to bind ITC respondents by estoppel at the time of a PTAB final written decision in the event the PTAB determines that the respondent-petitioner failed to establish unpatentability of a challenged claim but to hold the same PTAB final written decision has no effect whatsoever if the PTAB determines the respondent-petitioner succeeded in establishing unpatentability of another.

## CONCLUSION

For the foregoing reasons, Amici do not support either party to this appeal but respectfully submit that a stay of enforcement of an exclusion order will generally be appropriate pending appeal(s), if any, of a final written decision of the Patent Trial and Appeal Board invalidating all patent claims underlying an ITC exclusion order.

Dated:  September 1, 2017                    Respectfully submitted,

                                             /s/ Paul M. Schoenhard
Kevin Jakel                                  Paul M. Schoenhard
Jonathan Stroud                              Nicole M. Jantzi
Unified Patents Inc.                         McDermott Will & Emery LLP
2 North 1st Street, Fifth Floor              500 North Capitol Street NW
San Jose, CA 95113                           Washington, DC 20001
(650) 999-0899                               (202) 756-8000
                                             pschoenhard@mwe.com

*Counsel for Amicus Curiae*
*Unified Patents Inc.*                       *Counsel for Amici*

---

on any ground that the petitioner raised or reasonably could have raised during that post-grant review."  35 U.S.C. § 325(e)(2).

11

# PROOF OF SERVICE

I hereby certify that the foregoing was filed on September 1, 2017, using the

Court's Electronic Case Filing system, which automatically generates and sends by

email a Notice of Docket Activity to all registered attorneys participating in this

case.

/s/Paul M. Schoenhard
Paul M. Schoenhard
Counsel to Amici

## CERTIFICATE OF COMPLIANCE

Counsel for Amici certifies that this brief contains 2594 words (excluding the parts of the brief exempted by Fed. R. App. P. 32) as tabulated using the word count functionality of Microsoft Word.  Counsel further certifies that this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

Respectfully submitted,

/s/ Paul M. Schoenhard
Paul M. Schoenhard
McDermott Will & Emery LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
pschoenhard@mwe.com

*Counsel for Amici Curiae*